POMERANTZ LLP
Thomas H. Przybylowski
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
tprzybylowski@pomlaw.com

*Attorney for Plaintiff*

- additional counsel on signature page -

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL SOLAKIAN, Individually and On Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | <u>CLASS ACTION COMPLAINT</u> |
| v. | <u>JURY TRIAL DEMANDED</u> |
| RENOVACARE, INC., HARMEL RAYAT, and THOMAS BOLD, | |
| Defendants. | |

Plaintiff Michael Solakian ("Plaintiff"), individually and on behalf of all others similarly situated, by and through Plaintiff's attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge.  Plaintiff's information and belief is based upon, among other things, the investigation conducted by and through

Plaintiff's counsel, which includes without limitation: (a) review and analysis of regulatory filings made by RenovaCare, Inc. ("RenovaCare" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by RenovaCare; and (c) review of other publicly available information concerning RenovaCare.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of persons and entities that purchased or otherwise acquired RenovaCare securities between August 14, 2017 and May 28, 2021, inclusive (the "Class Period").  Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     RenovaCare is a development stage company that has not generated any revenue since its inception and has no commercialized products.  Its activities primarily consist of research and development, business development, and capital raises.  It owns the CellMist System, which consists of a treatment method for cell isolation for the regeneration of human skin cells and other tissues (the CellMist Solution) and a solution sprayer device to deliver cells to the treatment area (the SkinGun).

3.     On May 28, 2021, the SEC issued a litigation release stating that RenovaCare was being charged with alleged securities fraud.  According to the SEC's complaint, between July 2017 and January 2018, the Company's controlling shareholder and Chairman, Harmel Rayat ("Rayat"), "arranged, and caused RenovaCare to pay for, a promotional campaign designed to increase the company's stock price."  Specifically, "Rayat was closely involved in directing the promotion and editing promotional materials, and arranged to funnel payments to the publisher through consultants to conceal RenovaCare's involvement in the campaign."  When OTC Markets Group, Inc. ("OTC Markets") requested that RenovaCare explain its relationship to the promotion, the complaint alleges that "Rayat and RenovaCare then drafted and issued a press release and a Form 8-K that contained material misrepresentations and omissions denying Rayat's and the company's involvement in the promotion."

4.     On this news, the Company's stock price fell $0.66, or 24.8%, over three consecutive trading sessions to close at $2.00 per share on June 2, 2021.

5.     Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors that: (i) at the direction of Rayat, RenovaCare engaged in a promotional campaign to issue misleading statements to artificially inflate the

Company's stock price; (ii) when the OTC Markets inquired, RenovaCare and Rayat issued a materially false and misleading press release claiming that no director, officer, or controlling shareholder had any involvement in the purported third party's promotional materials; (iii) as a result of the foregoing, the Company's disclosure controls and procedures were defective; and (iv) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

6.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of

materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are in this Judicial District.

10.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the U.S. mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.    Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased RenovaCare securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.    Defendant RenovaCare is incorporated under the laws of Nevada with its principal executive offices located in Roseland, New Jersey. RenovaCare's common stock trades on the over-the counter market ("OTC") under the symbol "RCAR."

13.    Defendant Rayat was the Chairman of the Board of RenovaCare from March 2018 to October 2020 and was reappointed to that position in March 2021. Rayat also served as the Company's Chief Executive Officer ("CEO") from June 2018 to November 2019.

14.     Defendant Thomas Bold ("Bold") was the Company's CEO from December 2013 to June 2018 and the Company's interim Chief Financial Officer from September 2016 to October 2018.

15.     Defendants Rayat and Bold (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16.     RenovaCare is a development stage company that has not generated any revenue since its inception and has no commercialized products.  Its activities

primarily consist of research and development, business development, and capital

raises.  It owns the CellMist System, which consists of a treatment method for cell

isolation for the regeneration of human skin cells and other tissues (the CellMist

Solution) and a solution sprayer device to deliver cells to the treatment area (the

SkinGun).

## **Materially False and Misleading Statements Issued During the Class Period**

17.    The Class Period begins on August 14, 2017, when RenovaCare filed

its quarterly report on Form 10-Q with the SEC for the period ended June 30, 2017.

That quarterly report stated, in relevant part:

> Based on [an] evaluation the CEO has concluded that as of the end of
> the period covered by this report, our disclosure controls and
> procedures are effective in ensuring that: (i) information required to be
> disclosed by us in reports that we file or submit to the SEC under the
> Exchange Act is recorded, processed, summarized and reported within
> the time periods specified in applicable rules and forms and (ii) material
> information required to be disclosed in our reports filed under the
> Exchange Act is accumulated and communicated to our management,
> including our CEO, as appropriate, to allow for accurate and timely
> decisions regarding required disclosure.

18.    On November 14, 2017, RenovaCare filed its quarterly report on Form

10-Q with the SEC for the period ended September 30, 2017.  That quarterly report

stated, in relevant part:

> Based on [an] evaluation the CEO has concluded that as of the end of
> the period covered by this report, our disclosure controls and
> procedures are effective in ensuring that: (i) information required to be
> disclosed by us in reports that we file or submit to the SEC under the
> Exchange Act is recorded, processed, summarized and reported within

the time periods specified in applicable rules and forms and (ii) material information required to be disclosed in our reports filed under the Exchange Act is accumulated and communicated to our management, including our CEO, as appropriate, to allow for accurate and timely decisions regarding required disclosure.

19.    On January 8, 2018, RenovaCare issued a statement "comment[ing] on recent market activity."  Specifically, the Company issued a press release stating:

[O]n January 3rd, 2018, OTC Markets . . . informed the Company that OTC Markets had become aware of promotional activities concerning the Company.

OTC Markets provided an example, dated January 2nd, 2018, of the promotional material for reference. It is the Company's understanding that the material provided was part of an annual predictions report used in part to generate new subscribers for various newsletters owned by StreetAuthority LLC, an independent publisher founded in 2001. ***The Company had no editorial control over the content*** and was one of thirteen companies independently selected, researched and mentioned. The annual predictions report was disseminated during the last quarter of 2017. During this time, 2,190,000 shares traded, only 2% more than the average quarterly volume of 2,139,375 shares during all of 2017.

Subsequently, later in the 4th quarter, a material announcement regarding a failed challenge to a RenovaCare patent was made public. On December 20th, 2017, a press release was issued by Avita Medical Limited disclosing that its petition for an Inter Partes Review with the Patent Trial and Appeal Board ("PTAB") to invalidate all claims in U.S. Patent No. 9,610,430 (owned by the Company) was denied. This press release was followed by an article in Stockhead on December 21st, 2017, which more fully reported on the PTAB denying Avita Medical Limited's petition, and, thereby, upholding the patentability of RenovaCare's technology.

After the issuance of Avita Medical's press release and the follow-up article in Stockhead on December 21st, 2017, the trading volume of the Company's common stock increased 84% to 62,829 shares per day

between December 20th and December 29th, versus 32,720 per day previously between December 1st through December 19th, 2017.

***The Company is not affiliated in any way with the authors of the annual predictions report or its publisher.*** The Company issues press releases in the regular course of business and includes in its filings (the "SEC Filings") with the [SEC] the material business activities of the Company, and investors are encouraged to rely on the information provided directly by the Company in such press releases and SEC Filings.

***In the report, the substance of the material statements pertaining to the Company's technology and products are not materially false or misleading***, even though the report has significantly simplified the descriptions of the clinical indications and outcomes related to the use of the Company's cell spray for the treatment of burns and wounds, and used promotional, advisory and superfluous language in describing the Company, its products and its stock. Moreover, the author comments on the Company's interaction with the U.S. Food and Drug Administration and the performance of RenovaCare's stock. The Company does not know the basis for such opinions or conclusions arrived-at by the author. Investors are reminded to rely upon the Company's own statements, press releases, and filings with the SEC for information related to these matters.

Following notification from OTCQB Markets, the Company immediately made inquiries of its executive officers, directors, controlling shareholders (i.e., shareholders owning 10% or more of the Company's securities) and third-party service providers regarding their involvement in the creation or distribution of promotional materials related to the Company and its securities.

***To the Company's knowledge, the Company, its executive officers, directors or, its controlling shareholder, or any third-party service providers have, directly or indirectly:***

- **not** been involved in any way (including payment of a third-party) with the creation or distribution of promotional materials, including the annual predictions report, related to the Company and its securities; and

- **not** sold or purchased (other than in than in private placements conducted by the Company as described below) any shares of common stock of the Company within the last 90 days. The Company's former service provider, Inspiren Media LLC, originally acquired 5,000 shares of the Company on July 25th, 2008 and sold on January 3rd, 2018, after termination of its agreement with the Company. All activity in the Company's common stock by the Company's executive officers, directors and controlling shareholders has been disclosed by such officer, director and shareholder in the Company's SEC Filings.

The Company was not involved in the creation, or directing the dissemination, of the report. Through its investor relations agencies, the Company paid $90,005.25 between October 24th, 2017 and January 2nd, 2018, as part of its contractual agreement to pay for out of pocket costs, including reimbursement of dissemination related costs, incurred by the investor relations agency.

(Emphases added.)

20.     On March 13, 2018, RenovaCare filed its annual report on Form 10-K with the SEC for the period ended December 31, 2017.  That annual report stated, in relevant part:

Based on [an] evaluation, management, after evaluating the effectiveness of our "disclosure controls and procedures" (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)), have concluded that, as of December 31, 2017, our disclosure controls and procedures were effective in providing reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with U.S. generally accepted accounting principles.

21.     On April 12, 2019, RenovaCare filed its annual report on Form 10-K with the SEC for the period ended December 31, 2018.  That annual report stated, in relevant part:

Based upon [an] evaluation, our Principal Executive Officer and Acting Principal Financial Officer concluded, as of the end of the period covered by this Annual Report that our disclosure controls and procedures were not effective due to material weaknesses in internal control over financial reporting as discussed and defined in Management's Report on Internal Control over Financial Reporting referred to below.

* * *

Management has identified the following material weaknesses in our internal control over financial reporting:

- Ineffective control environment due to an insufficient number of independent board members, insufficient oversight of work performed, and the lack of compensating controls over financial reporting due to limited personnel;

- Ineffective design, implementation, and documentation of internal controls impacting financial statement accounts and general controls over technology pertaining to user access and segregation of duties, banking and disbursements, and financial accounting system applications; and

- Ineffective monitoring controls related to the financial close and reporting process, including management's risk assessment process and its identification, evaluation, and timely remediation of control deficiencies

22.     On May 14, 2020, RenovaCare filed its annual report on Form 10-K with the SEC for the period ended December 31, 2019. That annual report stated, in relevant part:

Based upon [an] evaluation, our [CEO] and Acting Principal Financial Officer concluded, as of the end of the period covered by this Annual Report that our disclosure controls and procedures were not effective due to material weaknesses in internal control over financial reporting

11

as discussed and defined in Management's Report on Internal Control over Financial Reporting referred to below.

\* \* \*

Management identified the following material weaknesses in our internal control over financial reporting as of December 31, 2019:

Because of the Company's limited resources, there are limited controls over information processing.

23.    On March 31, 2021, RenovaCare filed its annual report on Form 10-K with the SEC for the period ended December 31, 2020.  That annual report stated, in relevant part:

Based upon [an] evaluation, our [CEO] and Principal Financial Officer concluded, as of the end of the period covered by this Annual Report that our disclosure controls and procedures were not effective due to material weaknesses in internal control over financial reporting as discussed and defined in Management's Report on Internal Control over Financial Reporting referred to below.

\* \* \*

Management identified the following material weaknesses in our internal control over financial reporting as of December 31, 2020:

Because of the Company's limited resources, there are limited controls over information processing.

24.    The above statements identified in ¶¶ 17-23 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors that: (i) at the direction of Rayat, RenovaCare engaged in a promotional

campaign to issue misleading statements to artificially inflate the Company's stock price; (ii) when the OTC Markets inquired, RenovaCare and Rayat issued a materially false and misleading press release claiming that no director, officer, or controlling shareholder had any involvement in the purported third party's promotional materials; (iii) as a result of the foregoing, the Company's disclosure controls and procedures were defective; and (iv) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## The Truth Emerges

25.    On May 28, 2021, the SEC issued a litigation release stating that RenovaCare was being charged with alleged securities fraud.  According to the complaint, between July 2017 and January 2018, Rayat "arranged, and caused RenovaCare to pay for, a promotional campaign designed to increase the company's stock price."

26.    Specifically, "Rayat was closely involved in directing the promotion and editing promotional materials," by providing "false information to StreetAuthority regarding the efficacy of RenovaCare's experimental burn-wound healing medical device."  Among other things, these promotional materials described a patient who purportedly recovered from severe burns in ***three days*** using RenovaCare's SkinGun, when in reality, the "before" and "after" pictures were taken

*five years* apart.  The materials also claimed that SkinGun "could soon be approved by the FDA [U.S. Food and Drug Administration] . . . . RenovaCare has submitted a 510(k) filing to the FDA . . . ."  However, at the time, the Company did not have a pending 510(k) application and had withdrawn its only application (seeking approval for use in clinical studies).

27.    Rayat also arranged for monthly payments to the publisher "to be made through third parties for the fraudulent purpose of concealing Rayat's and the company's involvement."  According to the complaint, Rayat knew or was reckless in not knowing that the publisher was required to disclose payments from RenovaCare pursuant to Section 17(b) of the Securities Act of 1933, especially because in 2000, Rayat had settled a case with the SEC for violating the same statute.

28.    In January 2018, when OTC Markets had requested that RenovaCare explain its relationship to the promotion, the complaint alleges that "Rayat and RenovaCare then drafted and issued a press release and a Form 8-K that contained material misrepresentations and omissions denying Rayat's and the company's involvement in the promotion."

29.    On this news, the Company's stock price fell $0.66, or 24.8%, over three consecutive trading sessions to close at $2.00 per share on June 2, 2021.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

30.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired RenovaCare securities during the Class Period, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

31.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, RenovaCare's shares actively traded on the OTC.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of RenovaCare shares were traded publicly during the Class Period on the OTC.  Record owners and other members of the Class may be identified from records maintained by RenovaCare or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

32.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

33.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

34.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of RenovaCare; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

35.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it

impossible for members of the Class to individually redress the wrongs done to them.

There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

36.    The market for RenovaCare's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, RenovaCare's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired RenovaCare's securities relying upon the integrity of the market price of the Company's securities and market information relating to RenovaCare, and have been damaged thereby.

37.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of RenovaCare's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about RenovaCare's business, operations, and prospects as alleged herein.

38.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the

Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about RenovaCare's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## **LOSS CAUSATION**

39.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

40.    During the Class Period, Plaintiff and the Class purchased RenovaCare's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

41.    As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding RenovaCare, their control over, and/or receipt and/or modification of RenovaCare's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning RenovaCare, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

42.    The market for RenovaCare's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, RenovaCare's securities traded at artificially inflated prices during the Class Period.  On February 21, 2018, the Company's share price closed at a Class Period high of $10.65 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon

the integrity of the market price of RenovaCare's securities and market information relating to RenovaCare, and have been damaged thereby.

43.    During the Class Period, the artificial inflation of RenovaCare's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about RenovaCare's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of RenovaCare and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company's shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

44.    At all relevant times, the market for RenovaCare's securities was an efficient market for the following reasons, among others:

(a)    RenovaCare shares met the requirements for listing, and were listed and actively traded on the OTC, a highly efficient and automated market;

(b)    As a regulated issuer, RenovaCare filed periodic public reports with the SEC and/or the OTC;

(c)    RenovaCare regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)    RenovaCare was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.    Each of these reports was publicly available and entered the public marketplace.

45.    As a result of the foregoing, the market for RenovaCare's securities promptly digested current information regarding RenovaCare from all publicly available sources and reflected such information in RenovaCare's share price. Under these circumstances, all purchasers of RenovaCare's securities during the Class Period suffered similar injury through their purchase of RenovaCare's securities at artificially inflated prices and a presumption of reliance applies.

46.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of the State of Utah v.*

*United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

47. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants

are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of RenovaCare who knew that the statement was false when made.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

48.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

49.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase RenovaCare's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

50.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers

of the Company's securities in an effort to maintain artificially high market prices for RenovaCare's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

51.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about RenovaCare's financial well-being and prospects, as specified herein.

52.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of RenovaCare's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about RenovaCare and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

53.    Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

54.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing RenovaCare's financial well-being and prospects from the investing

public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

55.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of RenovaCare's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trade, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired RenovaCare's securities during the Class Period at artificially high prices and were damaged thereby.

56.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be

true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that RenovaCare was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their RenovaCare securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

57.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

58.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

59.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

60.    The Individual Defendants acted as controlling persons of RenovaCare within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the

false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61.    In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

62.    As set forth above, Defendants each violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.    Such other and further relief as the Court may deem just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff hereby demands a trial by jury.

Dated:  July 21, 2021

Respectfully submitted,

POMERANTZ LLP

*/s/ Thomas H. Przybylowski*
Thomas H. Przybylowski
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016

Telephone: (212) 661-1100
Facsimile: (212) 661-8665
tprzybylowski@pomlaw.com
jalieberman@pomlaw.com
ahood@pomlaw.com

*Attorneys for Plaintiff*